NOT DESIGNATED FOR PUBLICATION

No. 126,954

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL TUBBS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; NEIL B. FOTH, judge. Submitted without oral argument. Opinion filed September 12, 2025. Affirmed.

*Richard P. Klein,* of Lenexa, for appellant.

*Shawn E. Minihan,* assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., WARNER and HURST, JJ.

PER CURIAM: After a sordid procedural history, Michael John Tubbs was tried on three counts of aggravated indecent liberties with a child and one count of rape. The jury ultimately convicted Tubbs of two counts of aggravated indecent liberties with a child but could not agree on the other two charges. The jury's failure to agree on those two counts provided little victory for Tubbs, though, because his two convictions carried significant potential prison sentences. The district court sentenced Tubbs to life in prison with a minimum of 25 years before parole eligibility. Tubbs filed a direct appeal, which granted him no relief, and he now challenges his convictions through a K.S.A. 60-1507 motion.

1

Tubbs asserts numerous claims of ineffective assistance of counsel and several prosecutorial errors in his 60-1507 motion. Once again, Tubbs found no relief from the district court when it summarily denied his motion. On appeal, this court finds no error with the district court's judgment. Tubbs' claims of ineffective assistance of trial counsel are impermissibly conclusory and fail to demonstrate prejudice warranting an evidentiary hearing. Additionally, Tubbs' claims of prosecutorial error are not properly brought through a 60-1507 motion. Accordingly, the district court's judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Michael John Tubbs with three counts of aggravated indecent liberties with a child and one count of rape in connection with two child victims. Tubbs initially entered a no contest plea, but he later moved to withdraw his plea. The district court denied Tubbs' motion to withdraw the plea, but a panel of this court reversed on appeal and directed the court to grant Tubbs' motion to withdraw his plea. *State v. Tubbs*, No. 110,617, 2015 WL 569382, at *1 (Kan. App. 2015) (unpublished opinion).

After Tubbs withdrew his plea, the case proceeded to trial on all four counts— three counts of aggravated indecent liberties with a child and one count of rape. On December 1, 2016, a jury convicted Tubbs of two counts of aggravated indecent liberties with a child—one for lewd fondling or touching of B.G. and one for lewd fondling or touching of K.H. The jury failed to reach a verdict on Count II for rape of K.H. or Count IV for aggravated indecent liberties of a child related to lewd fondling or touching of himself by K.H. On June 19, 2017, the district court sentenced Tubbs to life in prison with no parole eligibility for 25 years on each of the two counts and ran the sentences concurrently. Tubbs filed notice of his direct appeal on the same day.

In his direct appeal to this court, Tubbs raised four issues: (1) The district court lacked jurisdiction over his crimes because the State's complaint was deficient; (2) the

2

district court erred by admitting inculpatory statements he made after he failed his polygraph exam; (3) his counsel was ineffective for failing to object to the inculpatory statements at trial; and (4) he was denied an impartial trial judge. *State v. Tubbs*, No. 118,179, 2019 WL 1868782, at *1 (Kan. App. 2019) (unpublished opinion). Finding no error, the panel affirmed Tubbs' convictions explaining that he "failed to preserve or adequately argue most of the issues presented on appeal," and specifically that "Tubbs' inculpatory statements were made voluntarily during a noncustodial interview." 2019 WL 1868782, at *10.

On September 28, 2020, Tubbs filed his pro se K.S.A. 60-1507 motion underlying this appeal. In more than 570 pages, Tubbs set out 15 grounds for relief, labeled alphabetically A-O. Tubbs alleged grounds including the unconstitutionality of several statutes; violation of his speedy trial rights; that he had an alibi witness; perjury by numerous witnesses; that the district court was partial and unfair; and that his charges were unlawful. On September 8, 2021, the State responded by requesting summary denial but also addressing Tubbs' 15 labeled grounds for relief and 12 other nonsectioned arguments within Tubbs' 60-1507 motion. Among the nonsectioned arguments were Tubbs' various claims of ineffective assistance of trial counsel, including that his counsel failed to object to evidence, fully investigate, prepare Tubbs to testify, and file appropriate motions; due process violations by investigating officers; ineffective appellate counsel; and prosecutorial error during closing arguments.

On July 26, 2023, the district court filed an extensive order summarily denying Tubbs' motion, finding that Tubbs failed to demonstrate his 60-1507 motion warranted an evidentiary hearing. The court addressed each of the 27 identified claims individually and explained Tubbs "failed to meet his burden of proof in establishing that even potentially substantial issues of fact or law exist" and his claims were "not otherwise apparent from, or supported by the files and record."

3

On August 2, 2023, the district court filed a journal entry of rulings on various pro se motions filed by Tubbs while his 60-1507 motion was pending. The court determined that all of Tubbs' 19 pending motions were moot or otherwise denied. Among its rulings, the district court denied Tubbs' motion to assign him legal counsel for his 60-1507 motion based on its summary denial.

Tubbs timely filed a pro se notice of appeal of the district court's denial of his 60-1507 motion. The district court appointed Tubbs counsel for this appeal.

DISCUSSION

On appeal, Tubbs reduced the dozens of claims asserted in his 60-1507 motion to six claims of ineffective assistance of counsel and one claim of prosecutorial error: (1) Trial counsel was ineffective for failing to move to suppress his statements to police; (2) trial counsel was ineffective for failing to object to K.S.A. 60-455 evidence; (3) trial counsel was ineffective for failing to properly prepare Tubbs to testify; (4) trial counsel was ineffective for failing to properly impeach witnesses who perjured themselves; (5) trial counsel was ineffective for failing to call an alibi witness; (6) trial counsel was ineffective for failing to properly investigate the case; and (7) the prosecutor committed misconduct. Tubbs does not challenge the district court's summary denial of the other claims raised in his 60-1507 motion, and those claims are deemed waived or abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned.").

I.    SUMMARY DISMISSAL OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

Defendants in custody may challenge the legality of their conviction or sentence through a K.S.A. 60-1507 motion. K.S.A. 60-1507(a). When evaluating a 60-1507 motion, a district court has three options: (1) determine the motion, files, and case records

4

conclusively show the prisoner is not entitled to relief and deny the motion summarily; (2) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held; if the court then determines there is no substantial issue, the court may deny the motion; or (3) determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing. *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

The movant bears the burden to show their 60-1507 motion warrants an evidentiary hearing. *Thuko v. State*, 310 Kan. 74, Syl. ¶ 3, 444 P.3d 927 (2019); Kansas Supreme Court Rule 183(g) (2025 Kan. S. Ct. R. at 238) ("The movant has the burden of establishing the grounds for relief by a preponderance of the evidence."). The need for an evidentiary hearing must be shown through more than "conclusory contentions," and the movant must "state an evidentiary basis in support of those claims or some evidentiary support must appear in the record." *Breedlove v. State*, 310 Kan. 56, 66, 445 P.3d 1101 (2019). The evidentiary basis must include "a factual background, names of witnesses, or other sources of evidence to demonstrate that the movant is entitled to relief." *Swenson v. State*, 284 Kan. 931, Syl. ¶ 2, 169 P.3d 298 (2007).

Here, the district court determined that the motion, files, and case records conclusively showed the movant was not entitled to any relief and summarily denied the motion. See *Adams*, 311 Kan. at 577-78. This court reviews the summary denial de novo to determine whether it agrees that the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief. *Breedlove*, 310 Kan. at 59.

Tubbs carries the burden to show that his claims warrant an evidentiary hearing. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) ("The burden is on the movant to show a claim of ineffective assistance of counsel warrants an evidentiary hearing."). Claims alleging ineffective assistance of counsel are analyzed under a two-prong test. *State v. Dinkel*, 314 Kan. 146, 148, 495 P.3d 402 (2021); see *Strickland v.*

*Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (establishing two-prong test). Under the first prong, the movant must show that counsel's performance fell below an objective reasonableness standard and was thus deficient. *Khalil-Alsalaami v. State*, 313 Kan. 472, 485, 486 P.3d 1216 (2021). If the movant can satisfy the first prong showing a deficiency, then in the second prong they must show prejudice. This means the movant must show there is a reasonable probability that—absent defense counsel's deficient performance—the result would have been different. *Khalil-Alsalaami,* 313 Kan. at 485-86.

While Tubbs asserts additional details on appeal to support his motion, the issue that must be addressed is whether Tubbs carried the burden to offer the district court sufficient evidentiary support to survive summary denial. He did not.

A. *Tubbs' claims of ineffective assistance of trial counsel for failure to impeach witnesses and failure to call an alibi witness are impermissibly conclusory.*

On appeal, Tubbs argues that trial counsel was ineffective for: (a) failing to impeach and/or challenge the credibility of witnesses Cari Thomas, Detective Evans, Jennifer Tylicki, and Detective Spaulding; and (b) failing to call an alibi witness. Both claims are impermissibly conclusory, lacking sufficient evidentiary or factual support to warrant an evidentiary hearing.

Although Tubbs reframes his impeachment claim on appeal into an ineffective assistance of counsel claim, arguing that there can be no logical rationale for not challenging this implausible testimony or highlighting it over and over in closing arguments, Tubbs actually raised these arguments as trial errors in his 60-1507 motion. Generally, allegations of error related to the introduction of evidence or for failure to object to evidence at trial must be brought on direct appeal, not collaterally attacked

6

through a 60-1507 motion. See *Trotter v. State*, 288 Kan. 112, Syl. ¶ 8, 200 P.3d 1236 (2009) ("Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised in a K.S.A. 60-1507 motion . . . , provided there were exceptional circumstances excusing the failure to appeal."). To bring such a claim through a 60-1507 motion, Tubbs must show exceptional circumstances by showing "that there was ineffective assistance of trial counsel in failing to object regarding an issue; there was ineffective assistance of direct appeal counsel in failing to raise an issue; or there was newly discovered evidence or an unforeseeable change in circumstances or constitutional law unknown to counsel and movant at the time of the trial and direct appeal." *Trotter*, 288 Kan. 112, Syl. ¶ 9. Tubbs fails to meet this standard. Tubbs asserts no exceptional circumstances to overcome the failure to raise the issue at trial or in his direct appeal, and thus the issue is not properly before this court. See *State v. Brown*, 318 Kan. 446, Syl. ¶ 3, 543 P.3d 1149 (2024) ("A K.S.A. 60-1507 motion cannot serve as a vehicle to raise an issue that should have been raised on direct appeal, unless the movant demonstrates exceptional circumstances excusing earlier failure to bring the issue before the court.").

Moreover, Tubbs failed to show prejudice from the alleged perjured testimony in that he failed to demonstrate that a change or challenge to the testimony would impact the trial outcome. See *Trotter*, 288 Kan. 112, Syl. ¶ 16, 200 P.3d 1236 (2009) ("An evidentiary hearing is not justified on a K.S.A. 60-1507 movant's claim of perjured and recanted testimony unless the motion establishes that the altered testimony is material and would cause the exoneration of the movant."). Finally, his argument is inadequately briefed and thus improperly conclusory. See *Meggerson*, 312 Kan. at 246. "In stating the evidentiary basis, the K.S.A. 60-1507 motion must set forth a factual background, names of witnesses, or other sources of evidence to demonstrate that the movant is entitled to relief." *Swenson*, 284 Kan. 931, Syl. ¶ 2.

Tubbs similarly failed to support his argument that his counsel was ineffective for failing to call an alibi witness. Tubbs contends he was with his alibi witness, A.P., on August 22, 2010, from 12:30 a.m. to 2:00 a.m., "away from the alleged location of the alleged crime," and that A.P. will testify as such. As the district court correctly explained, the timeline that Tubbs asserts does not provide an alibi because the evidence established that the offense occurred three hours after the time Tubbs was allegedly with A.P. On appeal, Tubbs admits that the alibi witness "would not have directly contradicted other witness testimony." Instead, he claims that "it would have supported [Tubbs'] credibility and supported at least part of his timeline for the morning in question." Tubbs' argument on appeal rests on his assertion that "any evidence that could have helped [Tubbs] should not have been excluded by counsel," especially given the minimal physical evidence in this case and counsel's failure to call any other witnesses on Tubbs' behalf.

Here, the testimony that Tubbs said the witness would provide does not contradict B.G.'s testimony that Tubbs assaulted her at about 5:00 a.m. on that date. Even if this court were to consider this issue as an ineffective assistance of counsel claim as Tubbs frames it on appeal, Tubbs fails to show that his claim warrants an evidentiary hearing because he does not even allege that A.P. would provide an alibi for a time period critical to the case. See *Thuko,* 310 Kan. 74, Syl. ¶ 3; see, e.g., *Shumway v. State*, 48 Kan. App. 2d 490, 513, 293 P.3d 772 (2013) (the testimony of either of two alibi witnesses might have established the defendant's alibi during a period of time which was a "critical factor" in establishing the defendant's innocence or guilt). Tubbs' claims of ineffective assistance of counsel for failure to impeach witnesses and call an alibi witness were impermissibly conclusory and properly summarily denied by the district court.

B. *Tubbs' claim that his counsel was ineffective for failure to object to K.S.A. 60-455 evidence is impermissibly conclusory.*

Tubbs argues that his counsel was ineffective for failing to object to the admission of testimony by K.H. and her mother of Tubbs' prior bad acts. Tubbs states that "[b]oth [K.H.] and her mother testified that [Tubbs] did not fix a lock on the bathroom door and that [Tubbs] cut a hole in a blanket covering a window that would allow him to look at [K.H.] from the outside." Tubbs argues on appeal that this evidence was improper propensity evidence that was "clearly brought in to strongly imply that [he] had the propensity to act on sexual urges or to act inappropriately."

K.H. testified that when she was in the shower, she would turn and see Tubbs on the other side of the shower curtain, acting like he was using the bathroom. She testified that this happened "[a] lot when [she] was in the shower." She testified that after the first time this happened, she began locking the door, but at some point the lock "randomly" broke. K.H. also testified that she hung a blanket over the windows to her bedroom for privacy but that at some point a small hole was cut into the blanket. She also testified that, "[o]ne time when I was changing I caught [Tubbs] looking at me through the window" through the hole in the blanket. K.H.'s mother testified similarly regarding the bathroom lock and blanket over K.H.'s window.

Tubbs' 60-1507 motion fails to show why this evidence was inadmissible and how he was prejudiced from its admission. In summarily denying Tubbs' claim, the district court found the evidence admissible as to motive citing to K.S.A. 2016 Supp. 60-455(d)—which permits admission of evidence of "defendant's commission of another act or offense of sexual misconduct" for consideration on a relevant and probative matter. K.S.A. 2016 Supp. 60-455(d). However, on appeal Tubbs argues that evidence that he spied on K.H. in the shower or broke the door lock are not included in the definition of "an act or offense of sexual misconduct" as listed in K.S.A. 2016 Supp. 60-455(g).

9

Without deciding whether that definition is exclusive, this court recognizes—as Tubbs should—that subsection (d) is not the only mechanism for admission of evidence of a prior crime or civil wrong. As the State points out, the evidence could be admissible for motive under a separate subsection. See K.S.A. 2016 Supp. 60-455(b).

"[E]vidence that a person committed a crime or civil wrong on a specified occasion . . . is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference" the defendant committed another crime. K.S.A. 2024 Supp. 60-455(a). However, evidence that a defendant committed other crimes or civil wrongs may be admissible "when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2024 Supp. 60-455(b). The district court employs a three-part test to determine whether evidence of a defendant's prior crimes or civil wrongs should be admitted under K.S.A. 60-455, which includes determining whether the fact to be proven is material; whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact; and whether its probative value outweighs the prejudicial effect. *State v. Torres*, 294 Kan. 135, 139-40, 273 P.3d 729 (2012). Tubbs did not address the admissibility either in his pro se 60-1507 motion or on appeal.

Additionally, to succeed on his claim, Tubbs must not only show that his trial counsel's performance was deficient for failing to object to inadmissible evidence but also that the deficient performance prejudiced his defense. See *Breedlove*, 310 Kan. at 66 (movant has the burden to make more than conclusory contentions and must state an evidentiary basis in support of those claims or some evidentiary support must appear in the record). Tubbs failed at both. The district court did not err in summarily dismissing Tubbs' claim of ineffective assistance of counsel as impermissibly conclusory.

10

C. *Tubbs fails to show prejudice from his remaining claims for ineffective assistance of counsel.*

Even if Tubbs could establish deficient performance under the first prong of the ineffective assistance of counsel standard for his remaining claims—which he has not— Tubbs cannot satisfy the second prong of "showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696. This court need not determine whether trial counsel's performance was deficient before examining whether Tubbs demonstrated prejudice from the alleged deficiencies. See 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Tubbs broadly argues that "[w]hether viewed individually or collectively, counsel's errors prejudiced" him because the limited physical evidence and lack of "third-party eyewitness testimony" meant his case came down to a "'he said/she said'" determination. In determining whether Tubbs has sufficiently shown prejudice from the alleged deficient performance of his trial counsel, this court must review the evidence to determine whether there is a reasonable probability the alleged deficiencies affected the trial outcome. See *Strickland,* 466 U.S. at 694.

One of Tubb's convictions for aggravated indecent liberties with a child was supported by B.G.'s contemporaneous allegations and testimony at trial. At trial, B.G. testified that on August 20, 2010, she went skating with her friend, K.H., and stayed the night at her friend's house, where Tubbs also lived. B.G. had never stayed there before. B.G. testified that after watching movies, she fell asleep wearing jean shorts and a white T-shirt. When she woke up, her shorts were unbuttoned, her zipper was down, and she saw Tubbs' hand coming from her pants. B.G. testified that Tubbs had touched her vagina with his hand while she was asleep and then he quickly left the room. B.G. continued to lay there for a short time before texting her mom.

11

The State presented pictures of text messages between B.G. and her mother to support B.G.'s testimony. At 5:23 a.m., B.G. texted her mother, "Mom are you up," and after receiving confirmation from her mom at 7:41 a.m., she texted, "Mom can you come and pick me up please" at 8:51 a.m. At 9:06 a.m., B.G. texted her mother, stating, "Mom this morning [K.H.'s] dad touched me when I was [sleeping] cuz I woke up and my pant's [*sic*] were undone and he was [standing] over me then he left really quick." B.G. testified that the first message she sent at 5:23 a.m. occurred "[p]robably 20 minutes" after Tubbs touched her. The State also presented the statement B.G. made to police on August 22, 2010, which summarized the same facts.

Tubbs' second conviction for aggravated indecent liberties with a child related to allegations that "on or between the 1st day of May 2007 and the 31st day of December 2010," Tubbs committed aggravated indecent liberties against K.H. At trial, K.H. testified extensively about the multiple occasions that Tubbs molested her starting in third grade. K.H. testified that Tubbs touched her at night when her mom was at work. On the first occasion, Tubbs touched her breasts under her shirt while she was asleep, and he did the same thing one other time at that same house. K.H. testified that when she was in the sixth grade, Tubbs used his hand and his penis to touch her breasts and her vagina on more than one occasion. Once in the sixth grade, she awoke to Tubbs standing next to her; he climbed on top of her, began touching her breasts under her shirt, and pulled her pants down. K.H. testified that she kicked and screamed and tried to scratch Tubbs' eyes out while Tubbs tried to pull down her underwear. At some point, K.H. got her foot in his stomach and kicked him off the bed. K.H. testified that though she was "not sure if it went in," her vagina started to hurt "very, very bad" when Tubbs attempted to put his erect penis inside.

K.H. testified about other times when Tubbs molested her. On another night, K.H. testified she woke up to the pain of Tubbs' fingers in her vagina. On another occasion, she woke up to Tubbs moving her hand back and forth on his penis. On yet another

12

occasion, she woke up in bed to "clapping" noises and something slimy in her hair. She testified that Tubbs had ejaculated in her hair and then "backed up and acted like he wasn't even in the room."

K.H.'s trial testimony was consistent with statements she made in an interview with Sunflower House on February 23, 2012. B.G.'s trial testimony was consistent with statements she made in an interview with Sunflower House on August 25, 2010.

Additionally, during jailhouse calls to his girlfriend, Tubbs made statements that could be construed to support the State's claims. Tubbs encouraged his girlfriend to contact K.H. and her mother to talk them out of any charges against him. He also said, "even if, even if I had something to do with something like what they're saying, I wouldn't even know it honey. I was, I was so fucked up back then." Finally, while there was no testimony that Tubbs' DNA was found on B.G. or her clothing—the DNA evidence did not rule him out as a DNA contributor. The State tested swabs of the button and zipper of B.G.'s shorts, the inside front and crotch area of the shorts, and parts of B.G.'s underwear. The button and zipper of B.G.'s shorts and the inside front portion of her underwear showed both male and female DNA contribution—but Tubbs could not be identified as the male contributor. However, he could also not be excluded as the male contributor. While the DNA evidence was not definitive, it could support the State's charges.

1.     No reversible prejudice from trial counsel's failure to move to suppress Tubbs' inculpatory statements

Tubbs claims his trial counsel was ineffective for failing to object to the admission of his "statements made prior/after to polygraph to detectives" and to the "custodial interrogations" by Detectives Evans, Spaulding, and Wall. Tubbs asserts that the officers

lied to him, badgered him to take a polygraph exam, and misstated the law, among other things.

On direct appeal, a panel of this court found that Tubbs' trial counsel's failure to contemporaneously object to the admission of Tubbs' inculpatory statements to officers did not constitute deficient performance because "the district court did not err in allowing the jury to hear those statements at trial." *Tubbs*, 2019 WL 1868782, at *9. The panel also analyzed Tubbs' claim that his counsel was ineffective for not objecting to Detective Wall's testimony at trial. The direct appeal panel held that because Tubbs' incriminating statements were admissible, counsel's performance was not deficient for failing to object to their introduction at trial. 2019 WL 1868782, at *9.

First, because this claim has already been addressed on direct appeal, Tubbs is precluded from raising it again. See *State v. Bailey*, 315 Kan. 794, 801-02, 510 P.3d 1160 (2022). A court's judgment on an issue is conclusive as to the parties' rights, questions, or facts when that issue is brought in subsequent proceedings. *Bailey*, 315 Kan. at 801-02. The purposes of the preclusion doctrine are to "'avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.'" 315 Kan. at 802 (quoting *State v. Parry*, 305 Kan. 1189, 1194-95, 390 P.3d 879 [2017]).

Second, even if the statements were erroneously admitted, Tubbs fails to show prejudice resulted. He broadly contends that his attorney's failure to object undermined Tubbs' credibility and requires review of trial counsel's strategic purpose through an evidentiary hearing. Tubbs made the statement after the detective told Tubbs that he had failed the polygraph exam and accused him of being deceptive. That is when Tubbs attempted to explain himself and asked the detectives, "[w]hat if I told [you I] thought it was my wife?" and said that he "didn't want to make any excuses if he needed help." The

14

officer used a technique where he suggested that Tubbs' behavior was accidental or unintentional and suggested that perhaps Tubbs was sleepwalking and thought he was interacting with his wife and Tubbs responded: "[T]hat sounds like it could have happened. . . . [I]n my heart I felt something wrong, like I possibly did something wrong." Tubbs also told the detectives that he "want[ed] to admit to that." Tubbs later became emotional and said he needed to "man up" and tell his wife.

There is no doubt that these statements are inculpatory. However, as the district court pointed out, Tubbs' prior counsel had moved to suppress many of the statements and the previous trial judge denied that motion. The district court stated, "[w]hile it is true that [trial counsel] did not file another such motion, defendant makes no argument that Judge Bennett's ruling was not accepted as the 'rule of the case.'" Thus, even if Tubbs' trial counsel had objected to these statements, Tubbs fails to show that the district court would have excluded the testimony. Tubbs' failure to show a likelihood the statements would have been excluded—particularly when the prior judge had previously ruled against him on the argument—undercuts any argument of prejudice from the failure to object.

Moreover, even if Tubbs' trial counsel performed deficiently by not objecting to these statements—which a panel of this court has found otherwise—Tubbs must show there is a reasonable probability the jury would have reached a different result absent the inculpatory statements. See *Strickland*, 466 U.S. at 696 (the defendant must show that the decision reached would reasonably likely have been different absent the errors).

These inculpatory statements were not the only evidence—or even the most compelling evidence—supporting Tubbs' conviction for aggravated indecent liberties against B.G. First, B.G. gave a written statement to police on August 22, 2010, less than 48 hours after the incident, which comported with her trial testimony and her statements in the Sunflower House interview. Second, B.G.'s mother also gave a written statement

15

on August 22, 2010, explaining that B.G. texted her the morning of the incident and told her what happened. B.G.'s mother also testified consistent with that statement. Third, the State presented the contemporaneous text messages between B.G. and her mother the morning of the incident. Fourth, no testimony undermined or refuted B.G.'s statements, testimony, or her credibility. Fifth, the DNA evidence could not exclude Tubbs as a contributor of male DNA to B.G.'s shorts and underwear. Finally, the State presented Tubbs' incriminating jailhouse statements to his girlfriend.

Considering the totality of the evidence—even without Tubbs' inculpatory statements to investigators—there is ample evidence to support Tubbs' conviction. Moreover, the inculpatory statements are not specific. There is no outright admission because there are no details of the conduct that he needed to "man up" about or that made him feel like he "possibly did something wrong." When considering the inculpatory statements in context of the other evidence, Tubbs fails to convince this court there is a reasonable probability the absence of these inculpatory statements *would have* affected the outcome. A reasonable probability is a probability sufficient to undermine confidence in the outcome—not a mere possibility. *Strickland,* 466 U.S. at 694. Even if there were no other reasons to summarily deny Tubbs' claim for ineffective assistance of counsel related to his trial counsel's failure to contemporaneously object to admission of Tubbs' inculpatory statements, Tubbs fails to demonstrate a reasonable probability that the jury would not have convicted him without it.

        2.        No prejudice from failing to prepare Tubbs to testify

Tubbs argues that he had the right to testify and that his trial counsel failed to prepare him to testify and he was "not given an explanation of his right to testify or counsel's opinion of whether his testimony would be helpful or unhelpful." While the defendant has a right to testify and that decision is their own, Tubbs did testify—so there is no claim of ineffective assistance for not permitting him to testify. It appears that

Tubbs' complaint relates to the method employed to prepare him to testify. Not only does Tubbs fail to provide evidence of the preparation conducted, but he also fails to assert the type of preparation that should have occurred or how different preparation would have produced a different result.

Even assuming Tubbs' trial counsel performed deficiently by failing to more extensively prepare Tubbs to testify—which Tubbs has not established—he must show prejudice from such failure. To the extent an evidentiary hearing would provide evidence supporting Tubbs' claim of deficient testimony preparation, he still fails to show prejudice from such deficiency. Tubbs does not address how his testimony would have changed or improved through different preparations and how that altered testimony would have affected the trial outcome.

3.      No prejudice from failure to investigate the case

On appeal, Tubbs claims that the totality of the ineffective assistance of counsel claims show that "trial counsel did not thoroughly investigate the case." This claim is just a recitation of a combination of Tubbs' other claims. He fails to assert any different or independent claims of ineffective assistance of counsel but summarizes his other claims. For the foregoing reasons—this allegation also fails.

Tubbs fails to demonstrate that he is entitled to relief on any of his claims for ineffective assistance of counsel.

II.     DISMISSAL OF PROSECUTORIAL ERROR CLAIMS

On appeal Tubbs contends that the prosecutor violated his right to a fair trial by making "numerous inappropriate comments, throughout the trial and in closing arguments, involving the credibility of witnesses." Tubbs asserts that these allegedly

17

erroneous statements prejudiced him because the lack of physical evidence meant this case turned on witness credibility. Therefore, the "continuous bolstering of the State's witnesses, during trial and during closing arguments, was inappropriate and was error." However, as explained below, Tubbs failed to make these arguments in his direct appeal and failed in this appeal to demonstrate exceptional circumstances warranting their review through a 60-1507 motion. See *Trotter*, 288 Kan. 112, Syl. ¶ 8; see also *Brown*, 318 Kan. 446, Syl. ¶ 3.

Tubbs points to the following prosecutorial errors during the case in chief: (1) Officer Mason said that B.G. "did a really good job" writing her statement; (2) the prosecutor asked if the alleged victim seemed "believable" when she wrote her statement, and Officer Mason answered: "Yes"; and (3) Detective Wall testified that after interviewing Tubbs, "I told him after our brief conversation that I didn't believe his side of the story."

In addition to those errors, Tubbs contends the prosecutor erred during closing argument by stating that Detective Wall "is not a detective who is trying to beat a confession out of someone," and that while he is trying to get a statement out of Tubbs, "he's not beating him with rubber hoses or putting him under the bright lights." Tubbs also argues that the prosecutor "carried on with a continuous phrasing of what a normal 'innocent' person would do" and stated, "No way a person who isn't guilty says anything like that" while referring to statements Tubbs made to Detective Wall about Tubbs realizing B.G. wasn't his wife. Finally, Tubbs argues that the prosecutor bolstered the credibility of K.H. with comments such as: "That's not something she can come up with on her own," regarding the statement she made to law enforcement, and that K.H. had a "remarkable amount of detail for these instances that happened so many years ago."

The State concedes on appeal that the prosecutor committed error when she asked Officer Mason if B.G. "seem[ed] believable" when she made her written statement in her

18

initial interview. However, that error did not go unaddressed. The district court sustained defense counsel's objection to the prosecution's statement and provided a limiting instruction. The district court also provided a limiting instruction after Detective Wall said that he "didn't believe" Tubbs' side of the story. So, these errors were addressed by Tubbs' counsel and the district court during the trial.

Once again Tubbs attempts to raise trial error through a 60-1507 motion. Prosecutorial misconduct must be raised in a direct appeal and cannot be collaterally attacked through a 60-1507 motion "unless it affected constitutional rights and there is a showing of exceptional circumstances excusing the failure to appeal on that issue" as explained above. *Bledsoe v. State*, 283 Kan. 81, Syl. ¶ 2, 88, 150 P.3d 868 (2007); see also *Brown*, 318 Kan. 446, Syl. ¶ 3 ("A K.S.A. 60-1507 motion cannot serve as a vehicle to raise an issue that should have been raised on direct appeal, unless the movant demonstrates exceptional circumstances excusing earlier failure to bring the issue before the court."). While exceptional circumstances to bring prosecutorial error claims through a 60-1507 motion include arguments of ineffective assistance of trial counsel for failing to object or preserve the claim or appellate counsel for failing to raise the issue—Tubbs makes no claims of ineffective assistance of counsel related to these errors. See *Bledsoe¸* 283 Kan. at 88-89. In fact, the record shows that trial counsel objected to two of the alleged errors. Even if Tubbs demonstrated exceptional circumstances warranting review of these claims through a 60-1507 motion, he must then show the conduct amounted to error and those errors prejudiced his right to a fair trial. See *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022) (quoting *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 [2016]).

Tubbs fails to demonstrate—or even argue—exceptional circumstances excusing his failure to bring these prosecutorial errors on direct appeal. Not only may this court decline to address these arguments because they should have been raised on direct appeal,

but Tubbs also failed to sufficiently make his argument. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (Issues not adequately briefed are deemed waived or abandoned.).

CONCLUSION

Tubbs' 60-1507 motion asserts claims of ineffective assistance of counsel without supporting evidence or demonstrating how the alleged errors prejudiced him by affecting the trial outcome. Additionally, Tubbs' claims of prosecutorial error were improperly brought through this collateral attack. This court finds no error from the district court's summary denial of Tubbs' 60-1507 motion.

Affirmed.