No. 101,285

STATE OF KANSAS, *Appellee*, v. PEDRO D. TORRES, *Appellant*.

(273 P.3d 729)

Opinion filed April 6, 2012.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, argued the cause and was on the briefs for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

LEBEN, J.: Pedro Torres was convicted of two counts of rape against the 11-year-old daughter of a woman who lived with Torres in Wichita. At trial, the State was allowed to present evidence related to Torres' conviction nearly two decades earlier for one count of indecent liberties with a child—evidence that was admitted to

show Torres' plan by evidence that he had such a similar method of committing such crimes that it would be reasonable to conclude that he had committed this one based on the earlier one.

But our court has held that the prior crime must be " 'so "strikingly similar" in pattern or so distinct in method of operation as to be a "signature" ' " for it to be admitted for this purpose. *State v. Prine*, 287 Kan. 713, 735, 200 P.3d 1 (2009) (quoting *State v. Jones*, 277 Kan. 413, 423, 85 P.3d 1226 [2004]). Torres' prior crime was not sufficiently similar to the later alleged rape to meet this test.

The victim of the earlier crime, who was 14 when it took place, testified that she was a young teenage girl looking for attention that she got through sexual activity with Torres, a neighbor, and they frequently had sexual relations before they were seen by police in bed together at an area hotel. She testified that her mother, who was not dating Torres, was aware of her daughter's relationship with Torres. The victim in the newer case was 11 and lived in the same house with Torres, who was involved in a relationship with the victim's mother. The victim in this case testified that Torres' advances were unwelcome and caused her pain and that her mother didn't believe her when she told her mother about the abuse; these events ended when the victim reported them to authorities.

The evidence of the earlier improper conduct was thus wrongly admitted in evidence at Torres' trial, and we are not able to dismiss this error as harmless (*i.e.*, as having had no effect on the trial's outcome). We therefore must order a new trial.

Torres has raised several additional issues on appeal. Most of them relate to his sentences and need not be considered because he must be retried and, if convicted, resentenced. Until then, we cannot consider a challenge to Torres' now-unknown potential sentence. Torres has raised one issue related to the instructions given to the jury at his trial. We address that issue because it impacts a retrial on these charges.

## Factual Background

To evaluate the admissibility of Torres' earlier conviction, we must first set out sufficient facts to frame the parties' legal dispute.

The victim in this case, V.H., lived with her mother, Bertha R., and Torres in Wichita. Bertha had met Torres by telephone, through Torres' sister, while Bertha was living in Mexico with Bertha's 18-year-old son, Daniel, and V.H. Torres traveled to Mexico to visit Bertha several times, and he suggested that Bertha and V.H. come to live with him in Wichita. Bertha accepted the offer in December 2006, and the two moved to Wichita; her son, Daniel, stayed in Mexico.

Bertha had no relatives in Wichita and didn't work after moving to Kansas; Torres provided the only household income. She testified that Torres "never let me talk with anyone" and "never let me go anywhere alone" in Wichita. In April 2007, Daniel became ill and Torres bought bus tickets so that Bertha and V.H. could visit him in Mexico. In May, Torres joined them in Mexico, and all three returned to Wichita in July 2007.

In October 2007, V.H. approached one of her teachers, Martiza Gardner, and said that Torres was molesting her. V.H. told Gardner that Bertha didn't believe this was happening, but V.H. reported to Gardner that Torres had put his "thing" and fingers into her private part. Interviews followed with school personnel and later with a police detective and a social worker.

V.H. told the detective and social worker that Torres touched her chest and her "private part" with his "private." She identified her "private part" as the area that included her vagina and indicated the male "private" as the area that includes the penis, using a diagram of male and female bodies. She then specifically said that Torres had touched her "private area" with both his finger and his "private." When Torres used his finger, she said it went inside her private part and went in a circular motion. She said that he had kissed her mouth, cheeks, neck, and chest. V.H. said that after each encounter, which occurred in her bedroom, her stomach hurt and her private part bled. She said Torres had first touched her in this manner in January 2007, that it had occurred "five or six times," but that it didn't happen again after their return from Mexico in July. No medical examination was done since the alleged activity had occurred months before.

When V.H. testified in December 2007 at a preliminary hearing, she said that Torres did these things not only before the trip back to Mexico but also after they had returned in July. In fact, she testified that it would happen "[a]lmost every night." The State ultimately amended its charge to allege one count of rape between December 1, 2006, and April 1, 2007—corresponding to the time frame before Bertha and V.H. returned to Mexico—and a second count of rape between July 1, 2007, and October 31, 2007, after they had returned to Wichita.

At trial, V.H. again testified that the events had occurred many times, generally around midnight in her bedroom. She would awaken to Torres pulling the covers off her bed. She also testified that the same sexual acts (penetration with Torres' finger and private part) occurred in Torres' guesthouse, which was behind his main house. She again testified that the abuse took place both before and after she had returned briefly with her mother to Mexico.

The jury heard testimony from V.H. and Bertha, as well as from school and police personnel who had interviewed V.H. when she initially disclosed these events to them. The jury also heard from Billie T., a 34-year-old woman who testified that she'd had sexual relations with Torres three to four times a week when she was 14. The jury convicted Torres on both counts of rape against V.H. The district court sentenced Torres as an aggravated habitual sex offender under K.S.A. 2006 Supp. 21-4642 to life in prison on each count, with the sentences to run concurrently.

## ANALYSIS

### I. *The District Court Erred in Admitting Evidence of the Defendant's Prior Conviction.*

Under the Kansas Rules of Evidence, established by statute, whether evidence may be presented that a person committed some earlier crime or civil wrong is governed by K.S.A. 60-455. This statute recognizes "the danger that the evidence [of a defendant's specific past action] will be considered to prove the defendant's mere propensity to commit the charged crime." *State v. Wells*, 289

Kan. 1219, 1227, 221 P.3d 561 (2009). Accordingly, the statute places limits on when such evidence may be presented.

We must determine whether evidence was properly admitted at Torres' April 2008 trial by applying the version of this statute, K.S.A. 60-455, that was in effect at the time of the trial and also when Torres allegedly committed these crimes. It provides that evidence of prior crimes and civil wrongs may not be admitted to prove a person's general disposition to commit the charged crime, but it may be admitted for limited purposes, such as to show the defendant's plan:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion[] is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-455 and 60-488 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 60-455.

K.S.A. 60-455 allows the admission of otherwise inadmissible evidence when the district court determines that its evidentiary value outweighs the potential for undue prejudice. See *State v. Richmond*, 289 Kan. 419, 435-36, 212 P.3d 165 (2009).

We have established a three-part test for the district court to use in determining whether evidence about a person's prior crimes or civil wrongs may be admitted under K.S.A. 60-455, and for an appellate court to apply when reviewing these matters on appeal. These steps were recently summarized in *State v. Inkelaar*, 293 Kan. 414, 424, 264 P.3d 81 (2011):

- First, the district court must determine whether the fact to be proven is material, meaning that this fact has some real bearing on the decision in the case. The appellate court reviews this determination independently, without any required deference to the district court.
- Second, the district court must determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact. In making this determination, the district court considers whether the evidence has any tendency in reason to prove the disputed

material fact. The appellate court reviews this determination only for abuse of discretion.

- Third, if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, then the district court must determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. The appellate court also reviews this determination only for abuse of discretion.

If the evidence meets all of these requirements, it is admitted, but in a jury trial the district court must give the jury a limiting instruction telling the jurors the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose). 293 Kan. at 424.

The district court ruled that Torres' past conduct was relevant to prove plan and preparation, and it gave the jury a limiting instruction that the evidence of Torres' earlier conduct could "be considered solely for the purpose of proving the defendant's preparation and plan." In its appellate brief, the State offers no suggestion that the evidence could be admitted to show preparation. And a claim not briefed is deemed abandoned. *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011). We therefore examine only whether the evidence was properly admitted to show Torres' plan.

Plan evidence may be admitted under either of two theories.

In one, there is some direct or causal connection between the earlier conduct and the crimes charged. *Jones*, 277 Kan. 413, Syl. ¶ 2. In such a case, since the two events are causally connected, proving the defendant's involvement in the earlier incident logically tends to establish the defendant's involvement in the charged crime as well. But there is no direct or causal connection here between Torres' 1988 relationship with Billie T. and his alleged rape of V.H. in 2007, so we must look to the second theory.

Under the second theory, the two events do not have to be directly or causally connected, but the method of committing the prior act must be so similar to the method used in the charged crime that it is reasonable to conclude that the same individual committed both acts. *Jones*, 277 Kan. 413, Syl. ¶ 2. In such a case,

the method of committing the act is so distinctive that even without a direct connection between the events, the evidence logically tends to establish the defendant's involvement in the charged crime.

In *Prine*, 287 Kan. 713, we carefully reviewed our cases under this second theory with recognition that we had not always consistently stated how similar the methods must be to meet admissibility standards. 287 Kan. at 730-35. We concluded that the best way to state the standard was to require that the methods in the earlier and present cases be so strikingly similar in pattern or so distinct in method of operation as to be a signature:

"[T]his standard governs examination of whether particular evidence has probative value . . . . If a defendant's prior bad act is so strikingly similar in pattern or so distinct in method of operation as to be a signature, then it is probative of defendant's plan in the case at bar. If it is not, then the evidence has no probative value on plan and the evidence is irrelevant if offered for that purpose. On appeal, we will review a district judge's decision under the 'signature' standard for an abuse of discretion. [Citation omitted.]" 287 Kan. at 735.

Even under the deferential standard for abuse-of-discretion review, see *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), it was error to admit evidence of the 1988 events involving Billie T. because those events simply are not sufficiently similar to the 2007 events alleged to have occurred involving V.H. The conduct in common between the old events and the charged crime must be something more than the similarities common to nearly all sexual-abuse cases. *Prine*, 287 Kan. at 731 (citing *Jones*, 277 Kan. at 422-23, and *State v. Davidson*, 31 Kan. App. 2d 372, 384, 65 P.3d 1078, *rev. denied* 276 Kan. 971 [2003]). Here, there are not enough similarities to make the two events "strikingly similar in pattern" or "so distinct in method of operation" as to make the method of committing these acts the "signature" of the defendant, Torres. See *Prine*, 287 Kan. at 735.

There are, of course, some similarities. Both girls were 14 or under; Torres had sexual relations with Billie T. and is alleged to have done so with V.H., and the State notes that Torres provided some financial support to both girls' mothers. But there are far too many differences to meet the test for plan evidence:

- Torres' relationship with the victims began in different ways. He was merely a neighbor to Billie T., but he started a committed relationship with V.H.'s mother and V.H. called him "Dad."
- Billie T. testified that she was a young teenage girl looking for attention, which she got from Torres, then a man in his forties. While such a relationship is inherently coercive, it was significantly different than Torres' alleged relationship with V.H. She testified that his actions were unwelcome and caused her pain.
- V.H. was 11 when Torres allegedly began to abuse her, while Billie T. was 14 when Torres began sexual activity with her and nearly 15 when that ended.
- The relationship between Torres and Billie T. ended only because authorities spotted them together at a hotel, while V.H. reported Torres to authorities.
- Torres' financial support to the girls' mothers arose in significantly different ways. Billie T.'s unemployed mother was Torres' neighbor, and she welcomed some financial help after her husband left the country. V.H.'s mother worked and supported her family before leaving Mexico, but testified that Torres did not let her work in Wichita.

The State suggests that we should ignore the rule we stated for plan evidence in *Prine* because that decision was rendered after Torres' trial. But the *Prine* decision interpreted the same version of K.S.A. 60-455 that was in place when Torres was tried and when he allegedly committed his crimes; the trial in *Prine* occurred before Torres' trial; and *Prine* reconciled our prior cases: it did not create a new rule that had never before been applied. We therefore apply the *Prine* rule here—even though, as in *Jones*, the evidence wasn't sufficient to establish similarity under any of the tests we had applied before *Prine* under K.S.A. 60-455. See *Jones*, 277 Kan. at 423 (noting that evidence was insufficient whether standard was " 'signature' " or " 'strikingly similar' " or "even 'similar enough' for K.S.A. 60-455 purposes").

In sum, we have carefully reviewed the evidence regarding these two events. The evidence of similarity is less here than in cases in

which we have upheld the admission of such evidence. See *State v. Overton*, 279 Kan. 547, 554, 112 P.3d 244 (2005) (finding sufficient similarity where both victims were 14 years old, defendant met both at school, discussed family problems with each, kissed and fondled each, hired each as babysitters to provide opportunity to be alone, and raped each boy in similar locations in his house); *State v. Moore*, 274 Kan. 639, 648, 55 P.3d 903 (2002) (finding sufficient similarity where victims were of comparable age, defendant videotaped victims before fondling their genital areas and exposing his penis, and both crimes occurred privately where defendant "had control of the environment"); *State v. Rucker*, 267 Kan. 816, 826, 987 P.2d 1080 (1999) (finding sufficient similarity where victims were similar in age and relationship to the defendant, sex acts were very similar, and defendant threatened to kill pets of both victims if they disclosed the abuse); *State v. Damewood*, 245 Kan. 676, 678-83, 783 P.2d 1249 (1989) (finding sufficient similarity given same pattern of conduct that involved arranging time alone with young teenage boys, meeting them for beekeeping activities, and performing similar sexual acts on each). We find the present case much closer to those in which we have held the admission of plan evidence was improper. See *Prine*, 287 Kan. at 735-36 (finding similarity insufficient to admit plan evidence when defendant performed different sex acts with each victim, even though the victims were roughly the same age); *Jones*, 277 Kan. at 421-23 (finding similarity insufficient to admit plan evidence when the sexual relationship started differently with each victim, different sexual acts were performed, and the frequency of sexual events varied even though victims had similar relationship to defendant). The district court abused its discretion by admitting Billie T.'s testimony.

Even if evidence has been wrongly admitted under K.S.A. 60-455, that doesn't automatically require setting aside a jury's verdict: the error still may be harmless. *Prine*, 287 Kan. at 736. So we must also determine whether the wrongful admission of this evidence was harmless error. In accordance with K.S.A. 60-261, before we can declare an error harmless, we must determine that it didn't affect a party's substantial rights—meaning that it didn't affect the

trial's outcome. *Ward*, 292 Kan. at 565. Because the wrongful admission of evidence here doesn't implicate any of the defendant's constitutional rights, to declare this error harmless we must be persuaded by the State (as the party benefitting here from the wrongly admitted evidence) that there is no reasonable probability that the error affected the trial's outcome. See *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012); *Ward*, 292 Kan. at 565.

Notably, the State made no argument in its brief that the admission of this evidence would have been harmless if we rejected the State's position that it was properly admitted. The failure to make that argument waives it. See *McCaslin*, 291 Kan. at 709. Even if the State had briefed the issue, however, we could not find this error harmless. There were substantial credibility issues in this case: V.H. admitted that her trial testimony was different than what she had told police officers on two key points. First, she told the police that Torres had touched her only five or six times, but she said at trial that he'd done so almost daily. Second, she admitted having told police that the last such event was in February 2007, while at trial she said that the last time was the day before she spoke to a teacher in October 2007. In addition, there was no physical evidence to corroborate her testimony. We are unable to make the finding required to conclude that the error was harmless, *i.e.*, that there is no reasonable probability that the wrongful admission of the evidence about Billie T. affected the trial's outcome.

The State also argues in a letter submitted under Supreme Court Rule 6.09 (2011 Kan. Ct. R. Annot. 49) that we should find the error harmless by applying a new version of K.S.A. 60-455 that was enacted and became effective in 2009, after Torres was tried, convicted, and sentenced, and after Torres had filed his appeal. We decline to do so here.

The State made no mention of the 2009 amendment to K.S.A. 60-455 in the brief it filed in October 2009, 5 months after the statutory amendment took effect. There are serious constitutional questions that would arise were we to apply a statutory change in evidence law made after a criminal trial had been held so that crucial evidence—inadmissible under the rules in place when the

defendant was tried—magically became admissible while the case was on appeal. In its most famous case interpreting the Ex Post Facto Clause of the United States Constitution, the United States Supreme Court said that the provision applied to "[e]very law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798); see also *Miler v. Florida,* 482 U.S. 423, 429, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987) (quoting *Calder*). The State's Rule 6.09 letter provides no legal argument regarding whether retroactive application of the amended statute would violate the Ex Post Facto Clause. Because the State's letter was not submitted until the last business day before oral argument, the defendant's response, which argues that retroactive application of K.S.A. 60-455 would violate the Ex Post Facto Clause, came after oral argument. We therefore conclude that the State's claim that the 2009 statute should be applied when considering whether evidence was admitted in error in Torres' 2008 trial is inadequately briefed and therefore not properly before us in this case. See *State v. Raskie,* 293 Kan. 906, Syl. ¶ 5, 269 P.3d 1268 (2012) (failing to adequately brief issue waives it); *Cooke v. Gillespie,* 285 Kan. 748, 758, 176 P.3d 144 (2008) (same).

Under the evidentiary rules in place when Torres was tried, important testimony was admitted in error and that error cannot be ignored as harmless. Torres is therefore entitled to a new trial.

II. *The Defendant Has Not Shown Reversible Error in the Jury Instructions.*

Torres makes two claims that the jury instructions given were in error.

First, before deliberations began, the district court gave the jury what we often refer to as an *"Allen*-type" instruction, telling the jurors that they should try if at all possible to reach a verdict. See *Allen v. United States,* 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). Torres contends it was error to give this instruction. Because no objection was made, however, Torres would have to show clear error in the giving of this instruction, meaning that there must

have been a real possibility that the jury would have rendered a different verdict had the instruction not been given. See *State v. Magallanez*, 290 Kan. 906, 925, 235 P.3d 460 (2010).

Since the date of Torres' trial, we have concluded that it is error to give the *Allen*-type instruction that was given to Torres' jury, but we have concluded in several cases that it was not clear error. See *State v. Washington*, 293 Kan. 732, 739-42, 268 P.3d 475 (2012) (citing cases); *State v. Salts*, 288 Kan. 263, 266, 200 P.3d 464 (2009). We conclude that we need not decide the issue in Torres' case. Because the case must be retried, we presume that the district court in any retrial will follow *Salt, Washington*, and our other cases holding that this instruction should not be given.

Second, Torres argues that the district court's instruction on juror unanimity—a pattern jury instruction that the jurors "must unanimously agree upon the same underlying act"—was insufficient. Torres had argued at trial that the instruction should have been modified to say "the same *specific* underlying act." To consider Torres' argument, we must step back to consider why this unanimity instruction is given.

When the State relies on multiple acts to support one charge, a unanimity instruction is generally required to make sure that all jurors have indeed agreed that the defendant committed one of the specific acts alleged, although a unanimity instruction is not required if the State adequately elects which act it is relying upon. *State v. Sanborn*, 281 Kan. 568, 569, 132 P.3d 1277 (2006); see also *State v. Colston*, 290 Kan. 952, 968-69, 235 P.3d 1234 (2010). For this reason, a pattern jury instruction on unanimity has been prepared, PIK Crim. 3d 68.09-B, and that pattern instruction was the basis for the district court's instruction here:

> "The State claims distinct multiple acts which each could separately constitute the crime of rape. In order for the defendant to be found guilty of rape, you must unanimously agree upon the same underlying act."

The parties agree that this is a multiple-acts case, recognizing that V.H. testified at trial that Torres penetrated her either with a finger or his penis on several occasions and at different locations during each time period charged as two criminal counts of rape.

See *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007) (finding multiple acts when conduct spanned several months and several locations). Thus, either a proper unanimity instruction or a clear election by the State as to the specific act it relied upon was needed, and the district court chose to address that need by using the pattern unanimity instruction. The use of pattern instructions is encouraged, though not mandatory, because deviating from the pattern instructions risks including erroneous language or omitting words that may be essential to a clear statement of the law. See *State v. Tully*, 293 Kan. 176, 197, 262 P.3d 314 (2011).

We see no error here in using the pattern instruction's language, "same underlying act," instead of the defendant's proposed language, "same specific underlying act." The first definition of "same" in the American Heritage Dictionary is "[b]eing the very one; identical." American Heritage Dictionary 1550 (5th ed. 2011). The instruction's reference to "the same underlying act" was sufficiently precise to tell the jury what its members needed to conclude to convict, and Torres does not claim that the State's closing argument misled the jury in any way on this point.

Since there may be a retrial, we note one way in which the unanimity instruction could be appropriately modified when the State relies upon multiple acts to support its charge and, as here, there is more than one count in which evidence of multiple acts was presented. In such cases, it would be better practice to modify the end of the pattern instruction to read: "you must unanimously agree upon the same underlying act for each count." That additional language, "for each count," would make even clearer that the unanimity instruction applies separately to each count.

Some additional factors in Torres' case support the conclusion that there was no instruction error here. The evidence in Torres' case consisted not only of multiple occasions on which sexual acts were said to have occurred during each charged time period but also of two types of penetration. The jury asked during deliberations whether it could submit a verdict on both digital and penile penetration, and the court responded (after consultation with counsel) that it could. The jury then indicated in its verdict that it

had found that both digital and penile penetration had occurred during each of the charged time periods.

The jury did not have to agree on the specific date of either offense, or even the specific location, so long as it concluded that the offense occurred in Sedgwick County during the time frame charged. See *Colston*, 290 Kan. 952, Syl. ¶ 4. The jury needed only to unanimously conclude that one penetration, either digital or penile, occurred during each of the charged time frames, and the jury was told that it must "unanimously agree upon the same underlying act." The jury also concluded that both digital and penile penetration had occurred during each time frame charged. We find no error in the jury instruction on this point.

III. *The Issues Defendant Raises Regarding His Sentence Are Moot.*

Torres raises two additional issues—that he should not have been sentenced as an aggravated habitual sexual offender and that the sentence he received constituted cruel and unusual punishment—that relate only to his sentence. Because the case is being remanded for a new trial, Torres' convictions and sentences are, of course, set aside. We cannot forecast the result of that new trial, and challenges to Torres' prior sentences are now moot. See *State v. Miller*, 293 Kan. 46, 54, 259 P.3d 701 (2011); *State v. Vaughn*, 254 Kan. 191, 205, 865 P.2d 207 (1993).

The judgment of the district court is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.

DAVIS, C.J., not participating.
LEBEN, J., assigned.