NOT DESIGNATED FOR PUBLICATION

No. 127,515

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

YVETTE COLLIER,
*Appellant*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Submitted without oral argument. Opinion filed October 31, 2025. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: A McPherson County jury found Yvette Collier guilty of each of the four offenses the State charged against her—possession of methamphetamine, making a false information, possession of drug paraphernalia, and a vehicle registration violation. Collier brings this appeal to challenge the sufficiency of the evidence to support her conviction for possession of methamphetamine and obtain our review of the district court's denial of her request for a mistrial. Following a careful review of the record in its entirety we are satisfied that the evidence adduced at trial was sufficient to sustain a conviction for the challenged drug offense. For the reasons stated below we find that while the district court abused its discretion when it denied Collier's request for a mistrial,

1

any error attributable to that ruling was harmless. Collier's convictions and the decisions of the district court are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

McPherson Law Enforcement Officer Jason Moen was on routine patrol when he observed a vehicle bearing what he believed to be an altered or modified license tag. Officer Moen initiated a traffic stop and contacted the driver, Collier, who informed Moen that she was the owner of the vehicle. Collier's roommate, John Mace, was in the front passenger seat, and Mace's minor son was in the backseat.

Once the officer obtained Collier's license, he radioed for backup from the K-9 unit. Sergeant Jared Kaufman responded to the call, and his dog performed a "free air sniff" of the car's exterior, ultimately alerting at a point between the front and rear doors. A subsequent search of the vehicle yielded a small bag, from just under the driver's seat, that contained cosmetics and four syringes, three of which were filled with a substance that later tested positive for methamphetamine. A second bag was collected from the area where Collier, as the driver, would place her feet. This bag was labeled with Collier's name. Officers also seized Collier's purse and a few personal items from the seat where she was sitting.

Deputy Connor Davis placed Collier under arrest, at Sergeant Kaufman's direction, and Collier was later charged with possession of methamphetamine, making a false information, possession of drug paraphernalia, and a vehicle registration violation.

At trial, the State presented the testimonies of Officer Moen and Sergeant Kaufman and played their body camera footage for the jury. On direct examination, Officer Moen recounted the incident involving Collier from the very beginning and explained that while he obtained her driver's license when he first made contact with her,

2

he also recognized her "from previous interactions." The State revisited the issue of those prior encounters later in Moen's testimony by posing a question to the officer that specifically inquired about a "prior *tag* incident." (Emphasis added.) Officer Moen responded that he stopped Collier approximately two months earlier in the same vehicle at which time a stolen tag was affixed to the car.

Defense counsel immediately requested permission to approach the bench outside the presence of the jury. The judge granted his request and, once the jury cleared the courtroom, counsel for Collier asked for a mistrial because the State's "targeted" line of questioning inquired into Collier's prior criminal activity in violation of K.S.A. 60-455. Following a brief exchange, the district court declared a mistrial but then afforded the parties a one-hour recess to allow the State an opportunity to research the issue.

The parties reconvened a short time later at which time the district court withdrew its earlier order for a mistrial. It acknowledged that the State attempted to explore an improper area, but defense counsel failed to enter a contemporaneous objection. In the absence of such an objection, a mistrial was not an available remedy, but the district court was willing to instruct the jury to disregard Officer Moen's response if that was how defense counsel preferred to proceed.

Collier's attorney asked the district court to provide the jury with both oral and written limiting instructions and for the record to reflect that counsel believed the incident deprived Collier of her right to a fair trial. The district court granted defense counsel's request and directed the State to inform Officer Moen that no further mention should be made of his prior interaction with Collier. Despite that admonition, a short time later, as the State presented a portion of Officer Moen's body camera video for the jury, defense counsel entered an objection, and the district court ordered the State to stop the video. Defense counsel protested that a portion of the video constituted the "second

3

time," and the district court instructed the jury to disregard the last comment it heard on the video. The State was also directed not to play any additional footage from the tape.

The trial proceeded without further incident during the State's remaining witnesses, and the jury ultimately returned a verdict of guilty for each of the four charged offenses. The district court ran Collier's sentences concurrent for a total term of 17 months but released her on probation for a period of 12 months.

Collier now brings an appeal before this court for a determination of whether the State truly sustained its burden to establish her guilt beyond a reasonable doubt for possession of methamphetamine and whether the district court's denial of her request for a mistrial amounted to an abuse of discretion.

LEGAL ANALYSIS

I. *Was the evidence elicited at trial sufficient to prove beyond a reasonable doubt that Collier possessed methamphetamine?*

Collier's first assertion of error consists of the claim that the State failed to present the jury with sufficient evidence to enable it to conclude that she was in constructive possession of the methamphetamine recovered from her vehicle. Rather, its evidence merely established her proximity to the drugs, which necessarily falls short of establishing possession.

The State counters that Collier's failure to include the State's trial exhibits in the record precludes meaningful review by this court and prohibits a ruling in her favor. It further asserts that to the extent the record allows for an analysis of her claim, there was sufficient evidence from which the jury could infer that Collier possessed the drugs.

4

*Standard of Review*

When the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). "This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). In conducting our assessment, we do not reweigh or resolve conflicts in the evidence, and we do not pass on the credibility of witnesses. *Aguirre*, 313 Kan. at 209.

In order to sustain a conviction for possession of methamphetamine, the State was required to prove, beyond a reasonable doubt, that Collier knowingly possessed methamphetamine on July 24, 2021. K.S.A. 21-5706(a). Possession of a controlled substance requires specific intent to exercise control over it and with knowledge of its nature. *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015). The element may be established by proving that Collier had exclusive control, joint control with another person, or constructive control such as when the item is kept in a place over which she had access and a right of control. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009).

*Collier's failure to include trial exhibits is not dispositive of her claim.*

As a preliminary matter, we must first address the State's contention that Collier's failure to include the State's trial exhibits in the record on appeal stymies our ability to conduct a meaningful review of her claim. A very similar issue was presented to and rejected by this court in *State v. Gantt*, No. 111,601, 2015 WL 5009868, at *4 (Kan. App. 2015) (unpublished opinion). In that case, Gantt neglected to add the State's 25 properly

admitted trial exhibits to the record on appeal, prompting the State to argue that the dereliction meant that Gantt's sufficiency of the evidence claim was not properly preserved for appeal. 2015 WL 5009868, at *4. The *Gantt* court quickly disposed of that contention on the grounds that the State failed to cite any authority in support of its claim. Additionally, the court expressly declined to assign any merit to the proposition that a criminal defendant's failure to include trial exhibits in the record on appeal resulted in a waiver of their claim. 2015 WL 5009868, at *4.

Presumably with the hope of faring better than Gantt, the State directs our attention to *State v. McCullough*, 293 Kan. 970, 999, 270 P.3d 1142 (2012), and *State v. Kelley*, No 110, 153, 2014 WL 6909607, at *3 (Kan. App. 2014) (unpublished opinion), as support for its assertion that Collier's failure to include the exhibits prohibits us from conducting any appreciable analysis of her sufficiency claim. We recognize that an appellant has the duty to properly designate a record to establish that the complained of error occurred and that when the appellate record is inadequate, we "presume that the district court's findings were properly supported." *State v. McMullen*, 290 Kan. 1, Syl. ¶ 1, 221 P.3d 92 (2009). But the State's position stretches that principle beyond its intended parameters in pursuit of a per se rule that the mere absence of properly admitted trial exhibits from the record jettisons a defendant's challenge to the sufficiency of the evidence to support their conviction.

A review of the caselaw, including *McCullough* and *Kelley*, clarifies that the touchstone of the rule continues to be whether the record the appellant compiled is adequate, in its entirety, to allow for review of their claim of error. For example, aside from reiterating the long-standing rule that it is the appellant's burden to formulate the record on appeal, *McCullough* does nothing to advance the position the State endeavors for us to adopt. In that case, several disturbances or outbursts occurred in the courtroom during McCullough's trial. The Kansas Supreme Court noted that when such incidents occur, it is imperative that counsel create a contemporaneous record "because the trial

6

court witnessed the outburst, viewed the jury's reaction, if any, and its determination of whether the circumstances justify intervention gives the situation context that is beneficial for appellate review." *McCullough*, 293 Kan. at 999. Thus, the presence or absence of trial exhibits, specifically, from the record was not an issue in the case.

We find *Kelley* equally unpersuasive. There, Kelley was convicted of attempted first-degree, premeditated murder and criminal possession of a firearm. He pursued an appeal, in part, to challenge the sufficiency of the evidence to prove that he acted with premeditation, as required to sustain his conviction for the attempted homicide. *Kelley*, 2014 WL 6909607, at *3. This court highlighted a series of factors contained within the record that supported a finding of premeditation. While it noted that any analysis beyond those particular points was frustrated by the omission of trial exhibits from the record, it ultimately concluded that the evidence "although limited by an incomplete record, was sufficient, circumstantial proof that Kelley premeditated his acts." 2014 WL 6909607, at *3. That is, contrary to what the State advocates for here, the absence of the exhibits did not wholly foreclose analysis of Kelley's claim that there was a lack of sufficient evidence to support his conviction.

Even in some of the most sensitive cases the adequacy of the overall record remains the focal point. Under the Revised Code for Care of Children, K.S.A. 38-2201 et seq., the district court may terminate parental rights when a child has been adjudicated a child in need of care and "the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). *In re N.G.A.*, No. 115,035, 2016 WL 5030261 (Kan. App. 2016) (unpublished opinion), analyzed the parents' appeal from the termination of their parental rights to their two children. During the termination proceedings, the State admitted numerous exhibits to substantiate its position. Included within those exhibits were reports from mental health care providers, case management summaries, reports

from various counselors, affidavits, and photographs documenting injuries. 2016 WL 5030261, at *10. Despite the parents' claim that reversal of the district court's decision was warranted because the State failed to present clear and convincing evidence of unfitness, the parents failed to include any of the trial exhibits in the record on appeal. But rather than find the absence of the exhibits prohibited review of the parents' claim, this court observed that the record contained extensive transcripts from the termination proceedings, which included testimony from the authors of the various reports that were omitted from the record. Accordingly, it was satisfied that it had access to enough information to enable it to conduct a thorough analysis of the sufficiency of the evidence relied upon to establish the parents' unfitness. 2016 WL 5030261, at *10.

Finally, this court arrived at a similar conclusion in *State v. Coryell*, No. 110,542, 2016 WL 757568 (Kan. App. 2016) (unpublished opinion). In that case, Coryell was charged with first-degree, premeditated murder, among other offenses, for the shooting death of Corey Cook, and his counsel primarily pursued a defense theory that it was an accidental shooting. To a lesser extent, defense counsel argued that alcohol played a role in the events of that evening. 2016 WL 757568, at *4, 6-7. The jury rejected those theories but nevertheless returned a guilty verdict for the lesser included offense of second-degree intentional murder. 2016 WL 757568, at *4.

Coryell pursued a direct appeal and while it was pending, he filed a motion to remand the case to the district court for a hearing under *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986), to determine whether his trial counsel provided deficient representation. *Coryell*, 2016 WL 757568, at *4. Specifically, Coryell took issue with counsel's failure to call expert witnesses to testify about Coryell's intoxication at the time Cook was killed. His attorney consulted two psychological experts prior to trial regarding Coryell's mental state and degree of intoxication at the time in question but ultimately decided not to call either expert at trial. 2016 WL 757568, at *6. Coryell's trial counsel explained at the *Van Cleave* hearing that given the older population of the trial venue, he

was concerned the jury would dismiss expert testimony about intoxication as simply a way to excuse Coryell's criminal behavior. Thus, from counsel's perspective, such testimony could potentially harm their defense theory. *Coryell*, 2016 WL 757568, at *6. Accordingly, counsel opted to simply elicit substantial evidence of Coryell's intoxication from lay witnesses who interacted with him that evening and request a voluntary intoxication instruction, the details of which he argued to the jury. 2016 WL 757568, at *7.

The district court determined that trial counsel's decision to forego expert testimony was a matter of trial strategy and Coryell could not establish that he suffered prejudice as a result of that course of action. *Coryell*, 2016 WL 757568, at *9. This court agreed but noted that its ability to fully analyze the prejudice prong was hampered somewhat by Coryell's failure to include certain State's exhibits in the record on appeal. 2016 WL 757568, at *9.

Coryell subsequently filed a K.S.A. 60-1507 motion and argued, unsuccessfully, that his appellate counsel, who also represented him during the *Van Cleave* proceedings, was ineffective. The motion was denied, and Coryell pursued an appeal to seek review of his claim that his appellate counsel provided subpar representation when he failed to include the trial exhibits necessary for the district court to give full and complete consideration to his claim that trial counsel was ineffective when he failed to call expert witnesses to discuss Coryell's intoxication. *Coryell v. State*, No. 122,104, 2021 WL 2021201 (Kan. App. 2021) (unpublished opinion). As support, Coryell highlighted the long-standing rule that an appellant has a duty to designate a record that affirmatively shows any claims of error and noted that his appellate counsel failed to honor that obligation. 2021 WL 2021201, at *4.

The district court denied the motion upon finding that Coryell's claim of ineffective assistance of appellate counsel lacked merit given that both it and this court in

9

Coryell's direct appeal ultimately decided that trial counsel's decision not to call expert witnesses was a strategic one that was arrived at following a thorough investigation. *Coryell*, 2021 WL 2021201, at *4. Coryell appealed, and this court affirmed the denial of his motion. The panel concluded that appellate counsel's failure to add the exhibits to the record properly fell within the wide range of reasonable professional assistance given that those exhibits essentially bolstered the district court's conclusion that trial counsel made a strategic decision when he opted to not go forward with the information he gleaned from his experts. 2021 WL 2021201, at *3.

Thus, the caselaw does not provide the State with the firm foundation required to support its position that a bright-line rule should be adopted concerning the addition of trial exhibits to the appellate record. The law instead indicates that we must be mindful of the context in which the challenge to the excluded exhibits arises and analyze each claim under their own unique set of facts and the law applicable to those facts. A per se rule does not currently exist, and we are not willing to adopt a measure that prohibits litigants from challenging the sufficiency of the evidence to support their convictions simply because trial exhibits were generally absent from the record for their appeal.

*The evidence was sufficient to support Collier's conviction.*

Turning to the merits, because Collier challenges the sufficiency of the evidence to support her conviction, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found her guilty beyond a reasonable doubt of knowingly possessing methamphetamine. *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

Again, Collier was not alone in the vehicle at the time it was stopped. Her friend, Mace, was in the passenger seat, and Mace's young son was in the backseat. In *State v. Faulkner*, 220 Kan. 153, 160, 551 P.2d 1247 (1976), the court stated:

10

"[W]hen illicit drugs are found in an automobile containing more than one person, the defendant's mere presence in the vehicle, without more, would not sustain his conviction for possession. Other circumstances which have been held sufficiently incriminating to link a defendant with illicit drugs in a vehicle are his previous participation in the sale of drugs, his use of narcotics, his proximity to the area where drugs are found and the fact the drugs were found in plain view."

The court in *State v. Rios*, 19 Kan. App. 2d 350, 357-58, 869 P.2d 755 (1994), supplemented the *Faulkner* factors to hold that a defendant's incriminating statements, suspicious behavior, and other drugs or paraphernalia found on their person may likewise be considered for purposes of establishing possession when more than one person is present at the time particular contraband is discovered.

Collier contends that her conviction cannot be permitted to stand because the jury was solely motivated by her proximity to the drugs when it returned its guilty verdict. As support for this assertion, Collier encourages us to consider disparities in the testimonies of the two law enforcement officers, the fact her other bags did not contain any drug evidence, the absence of any incriminating statements from her, and that there were no DNA or fingerprints that tied her to the methamphetamine. But this we cannot do as we are expressly prohibited from reweighing or resolving conflicts in the evidence and reassessing witness credibility. *State v. Anderson*, 318 Kan. 425, 441, 543 P.3d 1120 (2024).

The record reflects that the evidence supporting Collier's conviction is mostly circumstantial. Such evidence tends to establish a fact in issue by proving other events or circumstances which afford a basis for the jury to draw a reasonable inference that the fact occurred. *State v. Stuart*, 319 Kan. 633, 639, 556 P.3d 872 (2024). "[T]he law does not differentiate between the probative values of direct and circumstantial evidence, treating both as having similar weight in proving relevant facts." 319 Kan. at 639. It is not necessary that circumstantial evidence exclude every other reasonable conclusion in order

to be deemed sufficient to sustain a conviction. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020).

Several factors substantiate the jury's conclusion that Collier was guilty beyond a reasonable doubt of possessing the drugs. She was the owner of the vehicle and operating it at the time of the stop. The bag containing the drugs was recovered from under the driver's seat, at a position near the front of that seat and, because the space immediately behind her seat was occupied by a large duffel bag, it was not possible for the drugs to be placed in their location from the backseat. Finally, the drugs were concealed in a bag containing cosmetics that was not only very near Collier personally but was also very close to an additional bag that was close to Collier's feet, and which bore her name.

Viewing that evidence in the light most favorable to the State, as we are required to do under the governing standard of review, we are satisfied that a jury could have reasonably inferred from the evidence adduced at trial that Collier knowingly possessed the methamphetamine.

II. *Did the district court reversibly err in denying Collier's motion for a mistrial?*

Collier's second claim of error is that the district court abused its discretion in denying her motion for a mistrial after the State elicited testimony and published body camera footage from Officer Moen which indicated that he previously stopped Collier for driving with a stolen license tag, in direct violation of K.S.A. 60-455 and the inadmissibility of prior crimes evidence. The exact specifics of her claim are two-fold: (1) The district court erred in finding that a mistrial cannot be granted unless it is first preceded by a contemporaneous objection to the incident giving rise to the mistrial request; and (2) to the extent an objection is required, her attorney entered one at the earliest possible time and the district court erred in concluding otherwise. It is Collier's

12

position that the degree of prejudice the incident injected into her trial could not be cured by the district court's limiting instruction.

The State responds that the district court properly denied the motion for mistrial. It maintains that Collier's objection was not contemporaneous, therefore, the issue was waived under K.S.A. 60-404. On the merits, the State argues that the challenged testimony was fleeting, subject to multiple interpretations, and not emphasized during trial. The State further asserts that the district court appropriately mitigated any prejudicial impact through clear and immediate instructions to the jury to disregard the improper evidence. We will address each of the parties' points in turn.

Pursuant to K.S.A. 22-3423(1)(c), a criminal defendant may move for a mistrial when "prejudicial conduct . . . makes it impossible to proceed with the trial without injustice." A district court conducts a two-step analysis when a mistrial is requested. First, the district court must determine whether "some fundamental failure" has occurred during the judicial process. *State v. Sherman*, 305 Kan. 88, 118, 378 P.3d 1060 (2016). A fundamental failure is an occurrence that, taking the totality of the circumstances into consideration, nevertheless poisons the trial in a way that results in demonstrable prejudice to the defendant. See *McCullough*, 293 Kan. at 980-81. When such incidents or "failures" occur, the district court should consider whether corrective measures can effectively cure or mitigate the harm. If it concludes that such measures fall short of what would sufficiently alleviate the adverse effects of the incident, the judge must then determine whether the degree of prejudice exposes the defendant to an injustice and, if so, declare a mistrial. *Sherman*, 305 Kan. at 118-19.

To determine whether it is impossible to proceed without injustice to the defendant in the wake of a fundamental failure in the proceedings, the district court "must assess whether the fundamental failure affected a party's substantial rights, which means it will or did affect the outcome of the trial in light of the entire record." *State v. Ward*, 292 Kan.

13

541, 569, 256 P.3d 801 (2011). The applicable degree of certainty is dictated by the nature of the occurrence. In those situations where the failure infringes on a right guaranteed by the United States Constitution, the harmless error analysis set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), applies. *State v. Carr*, 314 Kan. 744, 773, 502 P.3d 511 (2022). Under the nonconstitutional, or statutory, harmless error standard found at K.S.A. 60-261, "the party benefitting from the error . . . must show there is no reasonable probability the error affected the trial's outcome in light of the entire record." *McCullough*, 293 Kan. 970, Syl. ¶ 9.

We review the district court's denial of Collier's requests for a mistrial under an abuse of discretion standard. *In re Bowman*, 309 Kan. 941, 951-52, 441 P.3d 451 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is the product of a legal error; or (3) arises out of a factual error. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

As we indicated, the incident giving rise to this claim occurred during the State's direct examination of Officer Moen when the following exchange occurred:

"Q. You mentioned when you were speaking with Ms. Collier that you recognized her from a prior tag incident. Tell us about that.

"A. A little under two months prior to that I assisted another deputy who had stopped her because the tag that was on that same Pontiac was a—it was reported as a stolen tag, and he—when he ran that tag it came back stolen.

"Q. And that was the same Pontiac that you stopped her in on July 24th, 2021?

"A. Yes.

"[Defense counsel]: Your Honor, can counsel approach?

"THE COURT: Why don't we—

"[Defense counsel]: I'd ask we clear the presence of the jury.

"THE COURT: Ladies and gentlemen of the jury, I'm going to ask you to go back to the jury room at this time.

. . . .

14

"THE COURT: [Defense counsel].

"[Defense counsel]: Your Honor, the State has just inquired into potential criminal behavior of a stolen tag being on a vehicle which was indicated my client was driving in violation of [K.S.A.] 60-455. I move this Court for a mistrial, prejudice.

. . . .

"THE COURT: —what was the purpose of that questioning?

"[Prosecutor]: Your Honor, it's to show both knowledge and intent, and it's admissible on those bases, not to show—not as propensity evidence for this crime, but to show her knowledge and intent in fabricating a new tag because one which matched the registration, rather than a tag that didn't match the registration of the car.

"THE COURT: Well, we didn't have a hearing on a [K.S.A.] 60-455 motion, number one. Number two, are you alleging that through his testimony that she was—had a stolen tag on her vehicle?

"[Prosecutor]: Your Honor, that was a separate report, a separate incident.

"THE COURT: From some prior occasion?

"[Prosecutor]: Correct, Judge.

"[Defense counsel]: And Your Honor, it's absolutely propensity evidence. I'm asking the Court to declare a mistrial at this time. We've just poisoned the jury. There's no corrective action or instruction we can give them to make them disregard that. . . .

. . . .

"THE COURT: Are you suggesting through his testimony that she had placed the stolen tag on the vehicle on a prior occasion?

"[Prosecutor]: That she had placed it, no. But that she was driving the vehicle, owned the vehicle, and knew that if the tag that was on the vehicle did not match the make and model of the car, that she would be pulled over. And that goes directly to absence of mistake, knowledge and intent for putting a fabricated vehicle match—or tag matching her current vehicle to try to evade law enforcement.

"[Defense counsel]: Your Honor, it's a different set of facts and circumstances, facts and circumstances now prejudice my client. That should have been brought up in a [K.S.A.] 60-455 [motion], and it should have been either allowed or denied by this Court prior to coming in to this trial.

. . . .

"THE COURT: That's the purpose of a [K.S.A.] 60-455 motion, [Prosecutor]. Why didn't you file a motion if you intended to introduce this evidence?

15

"[Prosecutor]: Judge, I didn't believe it would fall under [K.S.A.] 60-455 because it would—further, we did file a motion, a [K.S.A.] 60-455 motion that was not ruled on Yvette [*sic*].

"THE COURT: Not as to this issue.

. . . .

"[Prosecutor]: Your Honor, what I was—what I believe the testimony was is that she had a prior tag issue that caused her to be pulled over.

"THE COURT : But your officer testified that that was a stolen tag and that she was in possession of that, of stolen property.

. . . .

"THE COURT: I'm going to grant the motion for a mistrial.

"[Prosecutor]: Can I ask the Court to reconsider and recess so I can brief the matter?

"THE COURT: We'll take a recess. I'll give you an hour to get it figured out. But at this point what I'm hearing is that you—the testimony of just—that you obtained from this officer indicated that she had previously been driving a vehicle with a stolen tag on it and, in effect, was in possession of stolen property. And we did not have a [K.S.A.] 60-455 motion addressing this issue whatsoever. The 60-455 motion you filed dealt with the conviction of possession of marijuana with intent to distribute, I believe."

When the parties reconvened, the judge shifted course and explained that he reviewed the transcript and determined that while the State's line of questioning was impermissible, the officer's testimony was subject to more than one interpretation, and defense counsel failed to enter a contemporaneous objection. Accordingly, Collier's motion for mistrial was denied. Defense counsel requested that the jury receive both oral and written limiting instructions regarding the evidence. He also preserved his position, on the record, that Collier could not receive a fair trial at that point given the State's use of evidence that shared her similar past criminal conduct with the jury.

Applying our standard of review to the issue before us, we must resolve whether the district court abused its discretion with respect to the two inquiries it is required to make when confronted with a request for a mistrial: (1) whether there was a fundamental

16

failure in the proceeding and (2) whether the conduct resulted in prejudice that could not be cured or mitigated through jury admonition or instruction, thereby resulting in an injustice to Collier. *Ward*, 292 Kan. at 551.

We begin our analysis with the rather troublesome turn of events that resulted in the jury's exposure to the evidence. It is without question that the tag violation Officer Moen testified to involved an offense that Collier was cited for two months prior to the incident giving rise to the charges in the instant case. It is equally clear from the record not only that the State specifically inquired about that prior incident during the officer's direct examination, but that it did so for the express purpose of establishing Collier's "knowledge and intent in fabricating a new tag" for the vehicle so it matched the vehicle's registration. This practice essentially amounts to trial ambush and directly contravenes K.S.A. 60-455, the long-standing statutory procedure governing the admissibility of prior crimes evidence.

Pursuant to K.S.A. 2024 Supp. 60-455(e), the State is required to disclose its prior crimes evidence to a defendant at least 10 days before trial or as ordered by the judge and must prove that the defendant committed the earlier offense. Then the district court must make a pretrial determination as to whether that evidence will ultimately be admissible. That analysis is best "'performed in an organized and unhurried atmosphere in which the parties can fully explore the evidentiary pattern.'" *State v. Hogan*, 321 Kan. ___, 573 P.3d 207, 217 (2025) (quoting PIK Crim. 4th 51.030, Comment II.A).

The district court begins with an assessment of the materiality of the evidence, meaning whether it has a real bearing on the decision to be made in the case. *State v. Torres*, 294 Kan. 135, 139, 273 P.3d 729 (2012). It then moves on to an evaluation of whether those material facts are truly in dispute and, if so, whether the prior crimes evidence is relevant to proving those facts, including any of the eight material facts listed under K.S.A. 2024 Supp. 60-455(b)—motive, opportunity, intent, preparation, plan,

17

knowledge, identity, or absence of mistake or accident. 294 Kan. at 139. The district court must also ascertain whether that probative value outweighs any risk that admission of the evidence will expose the defendant to the risk of undue prejudice. Finally, when the trial nears its conclusion, the judge must determine the most effective way to instruct the jury to ensure it clearly understands how to use the evidence appropriately during its deliberations, and what uses are impermissible. 294 Kan. at 139-40.

This protocol must be strictly adhered to before K.S.A. 60-455 evidence can ever be presented to the jury. *State v. Gunby*, 282 Kan. 39, 57, 144 P.3d 647 (2006). Admitting this type of evidence, minus the prophylactic measures, creates a very real risk the jury will be left with the inference that the defendant's commission of a similar crime on an earlier occasion increases the likelihood that they committed the offense on another specified occasion. Yet, despite an undeniable awareness of the nature of the evidence at issue here, the State neglected to comply with the statute and failed to secure a pretrial ruling on the admissibility of the evidence before presenting it to the jury.

Initially, the district court recognized the incident as the problematic evidentiary development that it was and granted Collier's motion for mistrial. When the parties reconvened after the recess, however, the district court took a different tack and withdrew its order granting the mistrial. Although it is not completely clear what factor the district judge relied on to deny Collier's request for a mistrial, from the record it appears he believed a contemporaneous objection was required before a mistrial could be granted and that defense counsel failed to meet that obligation. But the contemporaneous objection rule is not part of the mistrial rubric. In our view, this misstep by the district court served to compound the error created by the State's inadmissible use of K.S.A. 60-455 evidence.

The contemporaneous objection rule is codified under K.S.A. 60-404 and states:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

The Kansas Supreme Court has found that implementing the rule in a mistrial setting "is like pushing a round peg into a square hole." *In re Care & Treatment of Sigler*, 310 Kan. 688, 707, 448 P.3d 368 (2019). The court clarified that K.S.A. 60-404 governs those appeals seeking to challenge the erroneous admission of evidence and "neither K.S.A. 60-404 nor any other authority requires an objection before a district court considers whether to declare a mistrial." 310 Kan. at 707.

To the extent a party does bear the burden to object in this context, we have no hesitation in concluding that Collier's counsel cleared that hurdle here. The plain language of K.S.A. 60-404 states that any such objections must be "timely interposed." When analyzing the language of a statute we are to give ordinary words their ordinary meaning. *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021). Adhering to that rule here, we understand "interpose" means "to place or put between; insert[;] to introduce by way of intervention; put forward as interference[;] to introduce (a remark, opinion, etc.) into a conversation, debate, etc.; put in as an interruption." Webster's New World College Dictionary 760 (5th ed. 2018). Accordingly, a "timely interposed" objection is one that enables the district court to make its ruling concerning the admissibility of evidence contemporaneously with a party's attempt to introduce that evidence at trial.

The record reflects that Collier's counsel objected immediately after Officer Moen testified that the prior stolen tag was affixed to the same vehicle Collier was driving when she was stopped for the offenses in this case. That is, counsel entered an objection at the earliest available opportunity.

Returning to the points we must resolve within the substantive aspect of Collier's claim of error, our first obligation is to determine whether there was a fundamental failure in the proceeding and, if so, can corrective measures cure its ill effects. If such measures are inadequate, we must ask whether the prejudice from the incident is so great that it is impossible for the trial to proceed without Collier suffering an injustice. A determination on the latter point requires a court to ascertain what impact, if any, the incident had on Collier's substantive rights. That is, after taking the entire record into consideration, can it be said that the incident will or did affect the outcome of her trial. *Ward*, 292 Kan. at 569. Again, the degree of certainty turns on whether the failure infringes on a right guaranteed by the United States Constitution. When it does, the harmless error analysis set forth in *Chapman* applies. Under the *Chapman* test, the party benefitting from the error "'must establish beyond a reasonable doubt that the cumulative effect of the errors did not affect the outcome.'" *State v. Alfaro-Valleda*, 314 Kan. 526, 552, 502 P.3d 66 (2022).

In weighing whether the district court abused its discretion in concluding a fundamental failure did not occur during Collier's trial, we conclude that question must be answered in the affirmative given the facts and circumstances of this case. Collier exercised her right to a jury trial to defend against several criminal offenses, including a vehicle tag violation, only to have her jury receive evidence, in violation of K.S.A. 60-455, that she committed a strikingly similar offense a mere two months earlier. In our view, that error was then compounded by the district court's misunderstanding of the mistrial criteria, which prompted it to impose the burden of a contemporaneous objection on Collier's counsel, which is not an obligation he was legally required to satisfy. *In re Care & Treatment of Sigler*, 310 Kan. at 707. That flawed analytical approach constitutes a legal error sufficient to sustain a finding that the district court abused its discretion under the first point in our analysis.

20

The question then arises whether that fundamental failure resulted in prejudice to Collier that could not be cured or mitigated through jury admonition or instruction, thereby resulting in an injustice. *Ward*, 292 Kan. at 551. We are not persuaded that the admission of evidence detailing Collier's prior traffic stop rendered it impossible for the trial to proceed without injustice. While the reference to a "stolen tag" identified similar prior criminal behavior, it was limited in scope and duration. Officer Moen's testimony regarding the prior encounter was brief and while the unredacted body camera footage may have momentarily reinforced that testimony, the video was quickly stopped. The record shows that the State did not resurrect the issue during its closing arguments and the district court orally instructed the jury to disregard the evidence. Thus, the curative instruction provided by the district court adequately alleviated any adverse effects attributable to the fundamental failure that occurred during Collier's trial. Jurors are presumed to follow admonitions issued by the court, and there is no evidence in the record which rebuts that presumption in this case. *State v. Kleypas*, 305 Kan. 224, Syl. ¶ 16, 382 P.3d 373 (2016).

Additionally, the weight of the properly admitted evidence against Collier was considerable. This included Officer Moen's testimony about the altered license plate involved in the charged offense, photographic evidence, and body camera footage pertaining directly to the incident for which Collier was on trial. Considering the totality of the evidence, any error in the admission of the prior stop did not so infect the trial with prejudice as to require a mistrial.

Affirmed.